### In re CASCADE INTERNATIONAL SECURITIES LITIGATION.

**This Document Relates to: All Actions.**

**No. 91–8652–CIV–NESBITT.**

United States District Court,
S.D. Florida.

Dec. 16, 1993.

Lybrand's ("C & L") Motion to Dismiss, filed September 30, 1992 (D.E. # 151), and Defendant Raymond James's Motion to Dismiss, filed October 1, 1992 (D.E. # 155).[1]

Atlee W. Wampler, Wampler, Buchanan & Breen, P.A., Miami, FL, Michael J. Pucillo, Burt & Pucillo (argued), West Palm Beach, FL, for plaintiffs.

Steven J. Toll, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll (argued), Washington, DC, Sherrie R. Savett (argued), Jeanne A. Markey, Berger & Montague, P.C., Philadelphia, PA, co-lead counsel for plaintiffs.

Homer L. Marlow, Joseph H. Lowe, Marlow, Connell, Valerius, Abrams, Lowe & Adler (argued), Miami, FL, for defendant Karp & Sommers.

Benjamin H. Hill (argued), Dennis P. Waggoner, Hill, Ward & Henderson, Tampa, FL, for defendant Gunster Yoakley.

Keith Olin (argued), Nancy Copperwaite, Morgan, Lewis & Bockius, Miami, FL, for defendant Raymond James.

John T. Kinsey, Kinsey & Gleason, Boca Raton, FL, for defendant Deltec Securities.

Matthew J. Broderick, Dechert, Price & Rhoades (argued), Philadelphia, PA, Richard H. Critchlow, Kenny, Nachwalter, Seymour, Arnold & Critchlow, Miami, FL, for defendant Coopers & Lybrand.

Richard E. Carlton, Sullivan & Cromwell (argued), New York City, for defendant Deltec.

## ORDER

NESBITT, District Judge.

This cause comes before the Court upon the Report and Recommendation of Magistrate Judge Barry L. Garber, filed May 19, 1993 (D.E. # 219), regarding Defendant Deltec Securities Corporation's ("Deltec") Motion to Dismiss, filed September 16, 1992 (D.E. # 128), Defendant Gunster, Yoakley & Stewart, P.A.'s ("GY & S") Motion to Dismiss, filed September 15, 1992 (D.E. # 130), Defendants Aaron Karp, Howard Sommers, and Karp and Sommers's (collectively "K & S") Motion to Dismiss, filed September 30, 1992 (D.E. # 147), Defendant Coopers &

## I. BACKGROUND

This action arises from the allegedly fraudulent activities of two law firms, an accounting firm, a securities broker, and an underwriter, as well as the officers and directors of the corporation, in relation to the issuance of shares of stock in Cascade International, Inc. ("Cascade"). Cascade was a publicly traded company made up of three divisions: cosmetics, fashion boutiques, and women's apparel stores. Throughout the late 1980s, Cascade acquired a number of clothing stores, and had intended to sell cosmetics from counters within these stores. By 1991, however, the Securities and Exchange Commission ("SEC") had begun to investigate Cascade, and in December of 1991, Cascade filed for bankruptcy after revelations that it had grossly misrepresented the number of cosmetic stores it operated, and after its President and Chief Executive Officer, Victor Incendy, had disappeared.

In July of 1991, a number of complaints were filed in federal court by purchasers of the common stock of Cascade which primarily alleged violations of the securities laws against the above-named Defendants. These actions were soon consolidated into one class action, and this consolidated action was given multi-district litigation status.

In their class action complaint, Plaintiffs accuse all Defendants of making materially misleading statements or omissions. Specifically, K & S, a law firm, is accused of making misrepresentations in Cascade's filings with the SEC. GY & S, another law firm, is accused of making misleading statements, allegedly in an attempt to hide Cascade's fraudulent activity, to people who were investigating the strength of Cascade. Plaintiffs allege that C & L, an accounting firm, made fraudulent misrepresentations in the process of auditing two of the subsidiaries of Cas-

1. While Plaintiffs' Consolidated Amended Class Action Complaint, filed July 7, 1992 (D.E. # 79) ("Complaint") alleges violations against defendants other than the above five, only these five groups of defendants, K & S, GY & S, C & L, Deltec, and Raymond James (collectively "Defendants") chose to file motions to dismiss.

cade, Fran's Fashions, Inc., and Conston, which were retailers of women's clothing. C & L is also accused of furthering the fraudulent activity by failing to disclose that Cascade's filings with the SEC were highly inaccurate. Raymond James, a securities broker, is accused of making false misrepresentations in the process of selling Cascade's stock. Finally, Plaintiffs allege that Deltec, an underwriter for Cascade's stock, acquired over a million unregistered shares from Cascade which it sold on the market in violation of the securities laws.

The Complaint alleges violations by all Defendants of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("§ 10(b)"), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.-10b–5 ("Rule 10b–5"), as well as alleges state common law claims for negligent misrepresentation and fraud. In addition, the Complaint also alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against K & S only, and alleges that Deltec violated §§ 12(1) and 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (1)–(2) ("§ 12"). The accused Defendants have moved to dismiss these allegations.

Magistrate Judge Barry L. Garber, in his Report and Recommendation filed May 17, 1993 (D.E. # 219), recommended that all counts be dismissed against the law firms, K & S and GY & S, because Plaintiffs, *inter alia,* had failed to establish a duty to disclose on the part of a law firm to individuals with which the law firm did not have a fiduciary relationship. The Magistrate Judge also recommended that the counts for common law negligent misrepresentation and fraud be dismissed as to all Defendants for Plaintiffs' failure to adequately allege their reliance on the alleged misrepresentations or omissions made by Defendants. All other counts, the Magistrate Judge stated, should not be dismissed, as Plaintiffs have adequately alleged all elements of these causes of actions.

All parties have filed objections and responses to the Magistrate Judge's Report and Recommendation. The Court is required to conduct a *de novo* review of both these objections and the original motions to dismiss. 28 U.S.C. § 636(b)(1) (1993) ("A judge of the Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

## II. STANDARD OF REVIEW

The standard of review for a motion to dismiss has been clearly established. Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). However, the Court is confined to a review of the allegations pleaded in the Complaint, must accept those allegations as true, and must resolve any factual issues in a manner favorable to the nonmovant. *See Quinones v. Durkis,* 638 F.Supp. 856, 858 (S.D.Fla. 1986). Thus, a claim may be dismissed pursuant to Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Furthermore, Rule 9(b) of the Federal Rules of Civil Procedure requires that any allegations of fraud in a complaint must be stated with particularity.[2] However, while Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged,'" the requirements of Rule 9(b) "must not abrogate the concept of notice pleading." *Durham v. Business Management Associates,* 847 F.2d 1505, 1511 (11th Cir.1988) (quoting *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3rd Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)); (quoting *Friedlander v. Nims,* 755 F.2d 810, 813 n. 3 (11th Cir.1985)). Therefore, "while mere conclusory allegations of fraud will not satisfy Rule 9(b), allegations which provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud are sufficient." *In re Sahlen & Associates, Inc. Se-*

---

**2.** Rule 9(b), Fraud, Mistake, Condition of the Mind, states that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b).

*curities Litigation*, 773 F.Supp. 342, 352 (S.D.Fla.1991).

Applying these principles, and after careful consideration of the Magistrate Judge's Report and Recommendation and a *de novo* review of the record, it is hereby **ORDERED** and **ADJUDGED** that the Report and Recommendation is adopted in its entirety for the reasons set forth below.

## III. DEFENDANTS AARON KARP, HOWARD SOMMERS, KARP AND SOMMERS, AND GUNSTER, YOAKLEY & STEWART, P.A.

In summary, the Magistrate Judge recommended that all counts of the Complaint be dismissed against the two law firms, K & S and GY & S, because Plaintiffs failed to demonstrate a law firm's duty to disclose negative information about a client to anyone with whom the law firm does not have a fiduciary relationship.

Plaintiffs object to this recommendation by stating that K & S helped prepare Cascade's fraudulent filings with the SEC, as well as drafted letters to shareholders and press releases which stated erroneous facts. Plaintiffs also argue that GY & S violated the securities laws by defending Cascade against accusations made by the press, securities analysts, and members of the public that the company was in financial difficulty, without investigating whether the representations made by GY & S on behalf of Cascade were true, as well as threatening those individuals with legal action if they investigated Cascade or published articles about the financial condition of the company. Also, Plaintiffs accuse GY & S of giving advice to Cascade without properly and fully investigating their client. Plaintiffs further argue that both

firms discovered and ignored numerous "red flags," i.e., facts which Plaintiffs allege should have made the defendant law firms aware that Cascade was committing fraud, or at least compelled them to investigate their client.

Defendants K & S and GY & S respond by arguing that any representations that they made were only done on behalf of the client and were not representations made on behalf of the law firms to third parties, that the law firms were mere "scriveners" for Cascade, and that they had no fiduciary relationship, and thus no duty, to anyone but Cascade. Furthermore, the law firms argue, they never issued legal opinions to the general public but only to their client Cascade. The law firms also argue that they had no duty to investigate Cascade, no duty to "tattle" on their client, and had, in fact, an ethical duty not to reveal client confidences. Attorneys, the law firms argue, do not have the same duties as other professionals, like accountants and securities brokers, because they do not represent their own opinions about their client, but only act as a conduit for the client's opinions.

### A. 10(b) and Rule 10b–5 Allegations

■ As the Magistrate Judge correctly determined, in order for a cause of action to be maintained under § 10(b)[3] and Rule 10b–5,[4] a plaintiff must allege that a defendant made a misstatement or omission of a material fact. Moreover, most circuits, including the Eleventh Circuit, have held that a defendant's misstatement or omission is actionable under § 10(b) and Rule 10b–5 only if the defendant had a duty to disclose negative information to the plaintiff. *See Rudolph v. Arthur Anderson & Co.*, 800 F.2d 1040, 1043 (11th Cir.1986), *cert. denied*, 480 U.S. 946, 107

---

3. 15 U.S.C. § 78j, Manipulative and deceptive devices, provides that:

 It shall be unlawful for any person, directly or indirectly . . .

 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

 15 U.S.C. § 78j (1993).

4. 17 C.F.R. § 240.10b–5, Employment of manipulative and deceptive devices, provides that:

 It shall be unlawful for any person, directly or indirectly . . .

 (a) To employ any device, scheme, or artifice to defraud,

 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

 17 C.F.R. § 240.10b–5 (1993).

S.Ct. 1604, 94 L.Ed.2d 790 (1987) ("Rule 10b–5, however, is not read literally. Instead, a defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose."). While the Eleventh Circuit has found a duty to disclose when the defendant was an accountant, *see Rudolph,* 800 F.2d at 1043 (quoting *Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir. 1975)), or a banker, *see Woods v. Barnett Bank of Fort Lauderdale,* 765 F.2d 1004 (11th Cir.1985), there has been no decision in this circuit specifically creating this duty to disclose on the part of an attorney.

However, the Fourth, Fifth, and Seventh Circuits have all held that an attorney does not have a duty to disclose potentially negative information about a client to a third party absent some kind of fiduciary relationship with the third party. *See Schatz v. Rosenberg,* 943 F.2d 485 (4th Cir.1991), *cert. denied,* ―― U.S. ――, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992); *Abell v. Potomac Ins. Co.,* 858 F.2d 1104 (5th Cir.1988), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 589 (1989); *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490 (7th Cir.1986). Furthermore, the Eleventh Circuit has established a set of factors which a court must consider in weighing whether a professional had a duty to disclose negative information to the general public about a client. As *Rudolph* explained:

> In evaluating the circumstances, 'we consider the relationship between the plaintiff and defendant, the parties' relative access to the information to be disclosed, the benefit derived by the defendant from the purchase or sale, defendant's awareness of plaintiff's reliance on defendant in making its investment decision, and defendant's role in initiating the purchase or sale.'

*Rudolph,* 800 F.2d at 1043 (quoting *Woodward,* 522 F.2d at 97 n. 28). The Court must look at the circumstances of each case in determining whether a duty to disclose exists. *Woodward,* 522 F.2d at 97 n. 28. Reviewing these factors and the facts of this case, the Court concludes that few, if any, of the factors are supported by the allegations in the Complaint. Therefore, the Court finds that *Rudolph* does not warrant the creation of a duty to disclose negative information about a client on the part of an attorney.

As Plaintiffs have failed to demonstrate any kind of fiduciary relationship between the defendant law firms and Plaintiffs, no duty to disclose exists, and, therefore, no action for securities fraud can be maintained against the defendant law firms. While Plaintiffs cite many cases in which a court allowed an action to progress against a lawyer or law firm, these cases involved direct misrepresentations made by the defendant law firm to a plaintiff with which the law firm had a fiduciary relationship. *See, e.g., FDIC v. O'Melveny & Meyers,* 969 F.2d 744 (9th Cir.1992) (finding a duty when law firm prepared documents to investors); *Molecular Technology Corp. v. Valentine,* 925 F.2d 910 (6th Cir.1991) (finding duty when law firm was in charge with editing public documents it knew to be false). Here, although GY & S may have made misrepresentations to parties other than their clients, Plaintiffs have not alleged a fiduciary relationship between GY & S and a third party to establish a duty to disclose. Accordingly, the counts alleging primary violation of § 10(b) and Rule 10(b)–5 must be dismissed against the defendant law firms.

Plaintiffs argue that to dismiss the defendant law firms because they had no duty to disclose negative information to the public would allow law firms to act with impunity in issuing misleading legal opinions. However, what Plaintiffs fail to admit is that the actions of these law firms did not rise to such a level that they were expected to give full and accurate representations to third parties. These law firms represented *Cascade,* not any third party, and therefore did not have duty to investigate their client. While Plaintiffs claim a great injustice would be done to purchasers of Cascade stock if these law firms were to be dismissed from the suit, this Court does not believe that the current law requires a law firm to direct its activities from representation to investigation of their clients at the slightest suggestion that their clients may be involved in unsavory activities. The Court will not go so far as to require law firms to fully investigate their clients at any hint that they may be conducting fraudulent activities, and then to punish the law firms if they do not do so. Otherwise, the law firms would be charged with a duty to the public at large to "tattle" on their clients. *See Abell,*

858 F.2d 1104, 1133 (quoting *Barker*, 797 F.2d at 497) (" 'Neither lawyers nor accountants are required to tattle on their clients in the absence of some duty to disclose. To the contrary, attorneys have privileges not to disclose.' "). For all their rhetoric, Plaintiffs have failed to indicate what duty the defendant law firms had. As Plaintiffs have failed to allege that the law firms represented them, no duty has been created between them or with the public at large, and, therefore, the counts for primary violations of § 10(b) and Rule 10b–5 cannot be maintained and must be dismissed.

## B. Aiding and Abetting Allegations

■ Plaintiffs' Complaint also alleges liability on the part of the defendant law firms K & S and GY & S for aiding and abetting securities fraud. The Magistrate Judge recommended that these counts be dismissed as well, because Plaintiffs have failed to allege facts which indicate that the defendant law firms had the conscious intent necessary to maintain an action for aiding and abetting.

Plaintiffs argue in their objection that the fact that the defendant law firms ignored the numerous "red flags," as well as their active participation in threatening third parties with legal action if they investigated Cascade, demonstrates the high degree of knowledge, or scienter, necessary to maintain the aiding and abetting counts. Plaintiffs also argue that the "atypical" activities of the law firms in the manner in which they represented and defended Cascade is sufficient evidence to demonstrate the requisite scienter.

Defendants respond by stating that none of their activities were atypical, nor do Plaintiffs allege any facts sufficient to demonstrate sufficient knowledge on the part of the defendant law firms to be aiders and abettors.

■ As the Magistrate Judge correctly ascertained, the elements for aiding and abetting securities fraud are:

'some other party has committed a securities law violation, ... the accused party has general awareness that his role was part of an overall activity that is improper, and ... the accused aider-abettor know-

ingly and substantially assisted the violation.'

*Woodward*, 522 F.2d at 94–95 (quoting *SEC v. Coffey*, 493 F.2d 1304 (6th Cir.1974), *cert. denied*, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975)). Looking specifically at the third element, Plaintiffs must demonstrate that Defendants "knowingly" assisted the violation, in other words, that they possessed the requisite scienter. Applicable precedent instructs that an evaluation of whether a defendant knowingly assists in the fraud "turns upon whether the aider and abettor defendant owed a duty to the plaintiff." *Schatz*, 943 F.2d at 496. If the defendant is under no duty to disclose, then the complaint must allege that the defendant acted with "a high degree of scienter, that is, with a 'conscious intent' to aid the fraud." *Woods*, 765 F.2d at 1010. *See also Schatz*, 943 F.2d at 496 ("When there is no duty running from the alleged aider and abettor to the plaintiff, the defendant must possess a 'high conscious intent' and a 'conscious and specific motivation' to aid the fraud").

As previously determined in section III.A., *supra*, neither of the two law firms were under a duty to disclose their client's activities, and, therefore, Plaintiffs must demonstrate "conscious intent" on the part of Defendants to maintain the aiding and abetting counts of the Complaint. However, Plaintiffs have failed to sufficiently allege the requisite degree of scienter. Plaintiffs argue that the allegations in their Complaint which assert that GY & S made statements to individuals other than their client establishes the requisite "conscious intent" necessary to meet this element. Furthermore, the numerous "red flags" should have warned the law firms of Cascade's fraudulent activity, and their failure to investigate their client demonstrated "conscious intent" to aid and abet the fraudulent activity.

However, "red flags," or "aroused suspicions," "do not constitute actual awareness of one's role in a fraudulent scheme." *Abell*, 858 F.2d at 1128. Furthermore, when no duty to disclose exists, "allegations that a defendant knew of the wrongdoing and did not act fail to state an aiding and abetting claim." *Schatz*, 943 F.2d at 496. Thus, allegations that the law firms merely failed to

investigate their client is not sufficient to establish an aiding and abetting claim.

Moreover, as *Woodward* explained:

In a case combining silence/inaction with affirmative assistance, the degree of knowledge required should depend on how ordinary the assisting activity is in the business involved. If the evidence shows no more than transactions constituting the daily grist of the mill, we would be loathe to find 10b–5 liability without clear proof of intent to violate the securities laws. Conversely, if the method or transaction is atypical or lacks business justification, it may be possible to infer the knowledge necessary for aiding and abetting liability.

*Woodward,* 522 F.2d at 97. Here, when allegations of the alleged "red flags" are removed, in accordance with *Abell,* Plaintiffs' Complaint fails to demonstrate how the law firms' actions of merely rendering legal opinions or coming to the defense of their client demonstrated more than activity constituting the "daily grist of the mill" of a law firm.

■ In addition, Plaintiffs have failed to demonstrate the existence of any "substantial assistance" on the part of Defendants as required by the aiding and abetting cause of action. This element has been defined as requiring more than allegations that the law firm acted as a scrivener for the client, but that the law firm "actively participate[d] in soliciting sales or negotiating terms of the deal on behalf of a client...." *Schatz,* 943 F.2d at 497. The Court finds, in accordance with the Magistrate Judge's recommendation, that Plaintiffs have failed to allege any activities on the part of K & S and GY & S that constituted anything more than acting as scriveners for their clients or conducting activities that make up the "daily grist of the mill."

Therefore, without clear proof of intent to violate the securities laws, the Complaint fails to adequately allege proper claims against K & S and GY & S for aiding and abetting securities fraud. Accordingly, those counts of the Complaint must also be dismissed.

### C. RICO violations against Karp & Sommers

■ Plaintiffs have asserted claims against Defendant Karp & Sommers for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a)–(d), either as primary participants or as aiders and abettors.[5] The Magistrate Judge recommended that these counts be dismissed because Plaintiffs have failed to allege sufficient knowledge on the part of K & S of the fraudulent activity. Plaintiffs argue that the Complaint is replete with references to K & S's failure to investigate whether the large number of cosmetic counters Cascade represented to the public that it owned and operated actually existed. Defendant K & S responds that mere allegations that a law firm failed to investigate its client and drafted documents on behalf of its client are insufficient to demonstrate a RICO violation, and that mere reckless disregard for the activities of the client does not establish a RICO claim.

In order for a count for RICO violations to survive a motion to dismiss, the Complaint must allege "two acts of racketeering with enough specificity to show that there is probable cause the crimes were committed. That determination is possible only if the factual basis of the predicate acts is set out with specificity." *Banco de Desarrollo Agropecuario, S.A. v. Gibbs,* 640 F.Supp. 1168, 1175 (S.D.Fla.1986). Again, Plaintiffs have failed to demonstrate in their Complaint the requisite intent to defraud, and, therefore, have failed to sufficiently allege the factual basis of the predicate acts. Plaintiffs' only support for Defendants' knowledge is that the law firms allegedly drafted false press releases and recklessly disregarded facts about the financial condition of Cascade. However, reckless disregard is not a sufficient level of intent to allege the underlying crime. *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362, 1370 (D.Conn.1987) ("Mere reckless disregard of the truth when drafting documents does not justify a finding of RICO civil liability on the basis that the party participated in the illegal enterprise."). Thus, to pursue an action for civil RICO, Plaintiffs must demonstrate Defendant's intentional participation in the conduct and affairs of the RICO enterprise. *Becks v. Emery–Richardson, Inc.,* Nos. 86–6866–CIV–GONZALEZ, 87–1554–CIV–GONZALEZ, 1990 WL 303548, at *37 (S.D.Fla.

---

5. 18 U.S.C. § 1964(d) provides for civil remedies for violations of § 1962.

Dec. 21, 1990). Plaintiffs have not alleged K & S's intentional participation in the affairs of Cascade, and, therefore, the Complaint as to the RICO counts against K & S must be dismissed.

Furthermore, the Supreme Court, in a decision handed down this year, significantly limited the application of the RICO statute in civil suits. *See Reves v. Ernst & Young,* —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Looking specifically at the language of § 1962(c), the Court held that in order " 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." *Id.,* at ——, 113 S.Ct. at 1173. As Plaintiffs have demonstrated no evidence that the defendant law firms participated in the operation or management of Cascade, Plaintiffs' § 1962(c) RICO claims, as well as all other claims brought pursuant to the RICO act, must be dismissed.

### D. State Law Claims

The Court agrees with the Magistrate Judge's finding that because all of the federal claims have been dismissed from the Complaint as to K & S and GY & S, the Court should no longer exercise its pendent jurisdiction over the state claims.[6] *Rice v. Branigar Organization, Inc.,* 922 F.2d 788, 792 (11th Cir.1991) ("When a district court dismisses all of the federal claims before trial, the decision whether or not to exercise pendent jurisdiction over state-law claims is within its discretion."). *See also L.M.E., Inc. v. City of Hollywood,* 605 F.Supp. 185, 190 (S.D.Fla.1985). Accordingly, the pendent state claims against KY & S and GY & S should be dismissed as well.

### E. Ethical violations

Nothing in this opinion should be read to indicate that the Court condones the actions of these two law firms, or that because they are to be dismissed from this entire action that they are entirely blameless in this fraud. The Court, as courts have held in the past, cannot express an opinion as to whether what the law firms did violated the rules of ethics.

As both the Fourth and Seventh Circuit have stated:

> [A]n award of damages under the securities laws is not the way to blaze the trail toward improved ethical standards in the legal … profession[ ]. Liability depends on an *existing* duty to disclose. The securities laws therefore must lag behind changes in ethical and fiduciary standards.

*Schatz,* 943 F.2d at 498 (quoting *Barker,* 797 F.2d at 497). This Court joins in agreement with that statement, and is bound by Plaintiffs' Complaint and the elements of the causes of action in considering whether the counts against the two law firms should be dismissed.

### IV. COOPERS & LYBRAND

The Magistrate Judge recommended that the count for securities violations against the accounting firm Coopers & Lybrand should be allowed to remain, as Plaintiffs had sufficiently alleged all the requisite elements of a § 10(b) and Rule 10b–5 claim. C & L objects to this recommendation by arguing that it did not act as the accountant for Cascade but only as the auditor for two of Cascade's subsidiaries, Fran's and Conston. Specifically, C & L argues that the only allegations of fraudulent misrepresentations in Plaintiffs' Complaint, as they relate to C & L, occur in reference to Cascade's 1991 10–K form, which C & L did not prepare.

Plaintiffs respond by arguing that their Complaint sufficiently demonstrates that C & L was not a minimal participant in the auditing of Cascade, but in fact gave extensive advice to Cascade. Plaintiffs argue as evidence of C & L's liability the fact that C & L failed to issue "going concern" opinions on Fran's and Conston despite "red flags" that Cascade was in financial difficulty, and that C & L failed to consolidate Conston's financial statements with Cascade's, thus allowing Cascade to avoid reporting Conston's significant losses, in violation of established accounting procedures. Furthermore, after C & L received Cascade's 10–K, it failed to

---

**6.** The state common law causes of actions for fraud and negligent misrepresentation should also be dismissed against the defendant law firms for failure to allege any reliance by Plaintiffs on statements made by the defendant law firms. *See* section VII, *infra.*

withdraw its opinion on Fran's or Conston despite the gross errors it knew were contained in the 10–K.

### A. § 10(b) and Rule 10b–5

#### 1. Duty to Disclose

■ Defendant Coopers & Lybrand argues that, like the defendant law firms, an accounting firm also has no duty to disclose negative information about a company to the public when the accounting firm did not participate in preparing the financial statements of the main corporation (here, Cascade), but only participated in preparing the financial statements of two of the corporation's subsidiaries. More importantly, C & L argues that it did not aid in the preparation of Cascade's 1991 10–K form which stated, erroneously, that Cascade owned 126 Fran's stores. Therefore, C & L had no duty to disclose any of the alleged fraud, as it was not the perpetrator of any of the fraud.

■ This position, however, is contrary to the applicable precedent in the Eleventh Circuit. In *Rudolph,* the court denied a motion to dismiss filed by an accounting firm on the grounds that an accountant stands in a "special position of trust vis-a-vis the public," noting that an accountant has a "duty to safeguard the public interest." *Rudolph,* 800 F.2d at 1044. Because the public relies on an accountant's representations when making investment decisions, and because the costs to an accountant of revealing potentially negative information are minimal, the accountant has a duty to disclose this information when preparing other accounting documents which rely on this negative information, regardless of whether it originally prepared the misleading documents. Plaintiffs are not arguing, as C & L believes they are, that an auditor of a subsidiary will always be liable for the fraud of the parent. However, when the auditor of a subsidiary knows of the fraudulent activities of the parent, it has a duty to disclose this information.

Accordingly, although C & L did not prepare Cascade's 1991 10–K form, Plaintiffs have demonstrated a set of facts which, if true, would entitle them to relief. By failing to disclose the false information contained in Cascade's 1991 10–K, which C & L knew to be false, C & L violated the duty to disclose negative *information to the public recognized by Rudolph.*

#### 2. Reliance

■ In order for Plaintiffs to adequately allege a securities fraud violation against any defendant, they must allege that Plaintiffs somehow relied on the misrepresentations or omissions of that defendant. *Ross v. Bank South, N.A.,* 885 F.2d 723, 728 (11th Cir. 1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990). To satisfy this element, Plaintiffs allege the "fraud on the market" theory, which basically creates a presumption of reliance, when no individual reliance can be demonstrated, by accepting that, in a developed securities market, the material information published by the defendant is reflected in the price of the stock. *See Basic Inc. v. Levinson,* 485 U.S. 224, 241–42, 108 S.Ct. 978, 988–89, 99 L.Ed.2d 194 (1988); *Lipton v. Documation, Inc.,* 734 F.2d 740, 745–46 (11th Cir.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985). The Magistrate Judge accepted this theory to satisfy the element of reliance.

C & L objected to this finding of reliance, stating that at no time did they ever make public statements about Cascade, but only about the subsidiaries Fran's and Conston. However, Plaintiffs argue that by not revealing information that C & L had a duty to reveal, C & L contributed to the fraud on the market which led to the increased price of Cascade's stock. This allegation, if taken as true, would set forth adequate evidence of reliance through the fraud on the market theory, and, therefore, Plaintiffs have met their burden as to this element.[7]

---

7. C & L argues that since they did not have a duty to disclose, and since they could not have made misrepresentations or omissions about Cascade, but only about Cascade's subsidiaries, Plaintiffs cannot demonstrate transaction or loss causation. As the Court has found that a duty to disclose could exist, and that C & L may have failed to disclose information that it had a duty to disclose, the Court has no hesitancy in finding that Plaintiffs have alleged that the actions of C & L encouraged them to invest (transaction causation) and contributed to their economic harm (loss causation). *See Sahlen,* 773 F.Supp. at 359–60.

As Plaintiffs have established sufficient support for all the elements of a primary violation of 10(b) and Rule 10b–5, this count will not be dismissed as to C & L.

### B. Aiding and Abetting

 Plaintiffs also allege that C & L aided and abetted the violation of the securities laws. The Magistrate Judge, citing to Plaintiffs' allegations that C & L knew that Cascade was representing that it had more Fran's stores than it did, that it avoided consolidating the Conston financial statements with Cascade's, and that it knowingly violated established accounting procedures, recommended that this count against C & L should not be dismissed. C & L objects to this recommendation by stating that since it was not Cascade's auditor, it could not have knowledge of nor participate in any fraud. Furthermore, Plaintiffs do not have standing to sue as the audit reports were of the subsidiaries and not of Cascade.

However, as has been previously discussed, Plaintiffs have alleged sufficient facts, such as their active attempts to avoid consolidating Conston and their failure to disclose relevant information after the publication of the 1991 10–K, that C & L knowingly and substantially participated in the fraud. Therefore, the motion to dismiss should not be granted. Merely because C & L did not publish the 1991 10–K does not mean that they could not know of the fraud and actively aid in perpetuating it through the other enumerated activities.

## V. DELTEC ASSET MANAGEMENT

Plaintiffs have not asserted a § 10(b) or Rule 10b–5 allegation against Defendant Deltec, but instead have alleged both an aiding and abetting violation, as well as § 12 violations, against Deltec. Deltec, in its objection to the Magistrate Judge's Report and Recommendation, requests that Count I of the Complaint be dismissed insofar as it seeks to impose primary liability against Deltec for § 10(b) and Rule 10b–5 violations. As Plaintiffs do not object to this request, and as no allegations of a primary violation against Deltec are made in the Complaint, the part of Count I that alleges a primary violation against Deltec is **DISMISSED.**

### A. Aiding and Abetting

 The Magistrate Judge found that Plaintiffs had pled sufficient evidence of knowledge on the part of Deltec to prevent the claim for aiding and abetting from being dismissed. Specifically, the Complaint alleges that Deltec knowingly received unauthorized shares of stock from Cascade, which it then sold on the open market.

Deltec argues that Plaintiffs must plead with specificity "conscious intent" on the part of Deltec that it was participating in the fraud in order to survive a motion to dismiss, and that the mere ignoring of "red flags" is not sufficient activity to reach the high degree of knowledge required. However, Plaintiffs' Complaint specifically alleges that Deltec *knew* that a large number of unauthorized shares had been issued by Cascade, *knew* that these shares were not transferable, yet sold those shares on the open market, which aided and abetted the overall scheme. (Compl. ¶ 224, 226). If true, these allegations establish the sufficient degree of knowledge on the part of Deltec, and at this stage in the proceedings, dismissing this count is unwarranted.

### B. Section 12

Plaintiffs have also sued Deltec under §§ 12(1) and 12(2) of the Securities Act of 1933.[8] The Magistrate Judge recommended that these counts should not be dismissed, as

---

**8.** 15 U.S.C. § 77*l*, Civil liabilities arising in connection with prospectuses and communications, provides that:

Any person who—
 (1) offers or sells a security in violation of section 77e of this title, or
 (2) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
shall be liable to the person purchasing the security from him....
15 U.S.C. § 77*l* (1993).

Deltec sold securities of value to some of the class plaintiffs through an initial offering which was accompanied by a prospectus that contained misstatements or omissions. Deltec objects, arguing that the Complaint fails to indicate that any plaintiff bought shares of Cascade from Deltec, that no prospectus was issued, and that Deltec did not sell these shares through an initial offering.

Plaintiffs adequately allege in their Complaint that one or more of the class plaintiffs may have bought shares from Deltec. (*See* Compl. ¶ 403). This is sufficient to meet this element of a § 12(1) cause of action.

Plaintiffs also have clearly alleged in their Complaint that Deltec's January 4, 1990, prospectus failed to allege that the shares it was offering were unauthorized. (Compl. ¶ 409). If true, these allegations meet the requirements of a § 12(2) violation.

■ Deltec further argues that Plaintiffs must allege reliance by the purchasing plaintiff on the prospectus. However, in *Currie v. Cayman Resources Corp.*, 835 F.2d 780, 782 (11th Cir.1988), the Eleventh Circuit held that "'plaintiffs need not prove that they relied in any way on the alleged misrepresentations or omissions.'" (quoting *Hill York Corp. v. American Int'l Franchises, Inc.*, 448 F.2d 680, 695 (5th Cir.1971)). Consequently, Plaintiffs need not show reliance on the actual prospectus but must only show that Deltec's prospectus contained misrepresentations or omitted material facts in order for Plaintiffs to maintain a § 12(2) cause of action. As Plaintiffs have alleged that there were inaccuracies in the prospectus, this count should not be dismissed on the grounds of inadequate allegations of reliance.

Deltec also argues that § 12(2) only applies to sellers of stocks during an initial offering. Plaintiffs have alleged that Deltec's sales through the January 4, 1990, prospectus were initial offerings to the public and that Deltec sold unregistered shares received from Cascade directly to Plaintiffs. These allegations, if true, are sufficient to allege that the shares at issue were purchased by Plaintiffs from Deltec through an initial offering.

Finally, Deltec argues that Plaintiffs have not alleged fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. However, the Complaint does specify the fraud Deltec allegedly engaged in through the selling of unauthorized shares and the failure to mention this in their prospectus. The Court finds that this is sufficient specificity under Rule 9(b) to withstand a motion to dismiss at this stage of the proceedings.

As Plaintiffs have adequately alleged all elements of § 12 violations, this count of the Complaint shall not be dismissed.

## VI. RAYMOND JAMES

The Magistrate Judge recommended that the counts for primary and secondary violations of § 10(b) and Rule 10b–5 against Raymond James, the securities broker, should not be dismissed. Plaintiffs have alleged that Raymond James issued misleading reports about the number of stores Cascade operated and about the strength and prospects of the corporation.

### A. Primary violations

■ Raymond James argues that because the omissions in their reports were not material, and because Plaintiffs have failed to allege the requisite scienter, the count for primary violations of the securities laws should be dismissed. First, Raymond James asserts that its omissions were not material because the omitted facts were part of the "total mix" of information available to the public. Whether the omissions were material or were part of the "total mix" of information in the market is not a decision to be made at the motion to dismiss stage, and is better reserved for, as the Magistrate Judge found, a motion for summary judgment.

■ Second, as the Magistrate Judge found, the Complaint adequately alleges the "severe recklessness" required in a § 10(b) count. *See McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir.1989) ("the rule of this Circuit is that a showing of 'severe recklessness' satisfies the scienter requirement"). Plaintiffs state that Raymond James represented that it had undertaken an extensive independent investigation of Cas-

cade prior to recommending the company's securities, and that it had continuously reassessed its evaluation of the company. (Compl. ¶¶ 158, 159.)

## B. Aiding and Abetting

■ While the Magistrate Judge did not extensively review the aiding and abetting count as it applied to Raymond James, the Court finds that he was correct in his recommendation that the count should not be dismissed. Plaintiffs have adequately alleged sufficient activity on the part of Raymond James to indicate the requisite scienter necessary to maintain an aiding and abetting allegation. Specifically, Raymond James engaged in touting stock in a company which it said it had researched, when, in fact, that company was in severe financial trouble and had issued a fraudulent 10–K. At the motion to dismiss stage, it is premature to dismiss this count because, if true, the Plaintiffs may prevail.

## VII. STATE LAW CLAIMS

While the pendent state law claims for fraud and negligent misrepresentation may be dismissed against Defendants K & S and GY & S, because the federal cause of action against these defendants are no longer viable,[9] the pendent state law claims should also be dismissed, as well as the similar counts against all Defendants, for failure to state a claim upon which relief can be granted.

### A. Fraud

■ As the Magistrate Judge correctly determined, one of the elements of common law fraud in Florida is reliance by Plaintiffs on the false representations of the Defendants. *Johnson v. Davis,* 480 So.2d 625, 627 (Fla.1985). However, Florida does not recognize a "fraud on the market" theory to establish reliance, but requires allegations of actual reliance. *Sahlen,* 773 F.Supp. at 371. As in *Sahlen,* the Complaint here fails to allege actual reliance by Plaintiffs on specific representations made by Defendants, but instead only alleges the more general reliance on the market as a whole, which is effected by the false representations of Defendants.

Accordingly, the count for fraud as to all Defendants must be dismissed.

## B. Negligent Misrepresentation

■ Actual reliance is also one of the elements for a negligent misrepresentation cause of action. *See Atlantic Nat. Bank of Florida v. Vest,* 480 So.2d 1328 (Fla. 2nd Dist.Ct.App.1985), *rev. denied,* 491 So.2d 281 (Fla.1986). As the Magistrate Judge determined, no allegation in the Complaint states that any Defendant made its negligent misrepresentation with the intent that Plaintiffs would rely on that representation in purchasing Cascade stock. Therefore, the negligent misrepresentation count against all Defendants must also be dismissed.

## VIII. CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant Deltec Securities Corporation's Motion to Dismiss, filed September 16, 1992 (D.E. # 128), is **DENIED** in part and **GRANTED** in part. Count I of the Consolidated Amended Class Action Complaint is **DISMISSED** only insofar as it seeks to impose primary liability against Deltec for § 10(b) and Rule 10b–5 violations. Count V (Negligent Misrepresentation) and Count VII (Fraud) of the Consolidated Amended Class Action Complaint are **DISMISSED** as to Defendant Deltec Securities Corporation.

2. Defendant Gunster, Yoakley & Stewart, P.A.'s Motion to Dismiss is **GRANTED**. Accordingly, Counts I, V and VII of the Consolidated Amended Class Action Complaint are **DISMISSED** as to Defendant Gunster, Yoakley & Stewart, P.A.

3. Defendants Aaron Karp, Howard Sommers, and Karp and Sommers's Motion to Dismiss is **GRANTED**. Accordingly, Counts I, II, III, IV, V, and VII of the Consolidated Amended Class Action Complaint are **DISMISSED** as to Defendants Aaron Karp, Howard Sommers, and Karp and Sommers.

4. Defendant Coopers & Lybrand's Motion to Dismiss is **DENIED** in part and **GRANTED** in part. Only Count V (Negli-

---

9. *See* cases cited *infra* section III.D.

gent Misrepresentation) and Count VII (Fraud) of the Complaint are **DISMISSED** as to Defendant Coopers & Lybrand.

5. Defendant Raymond James's Motion to Dismiss is **DENIED** in part and **GRANTED** in part. Only Count V (Negligent Misrepresentation) and Count VII (Fraud) of the Consolidated Amended Class Action Complaint are **DISMISSED** as to Defendant Raymond James.

DONE and ORDERED.

### REPORT AND RECOMMENDATION

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court pursuant to an Order of Reference entered in this cause on October 30, 1991. The following Report and Recommendation is submitted on the defendants', Karp, Sommers and Karp & Sommers (collectively "K & S"); Raymond James Financial, Inc., and Raymond James & Associates, Inc. (collectively "Raymond James"); Deltec Asset Management Corporation ("Deltec"); Gunster, Yoakley & Stewart, P.A. ("GY & S") and Coopers & Lybrand ("C & L") (collectively "defendants"), motions to dismiss the Consolidated Amended Class Action Complaint.

### BACKGROUND

On October 18, 1991, plaintiff Howard Rosen filed a complaint on behalf of purchasers of common stock in Cascade International, Inc. ("Cascade") alleging that Cascade, its officers, directors, independent auditors, and others violated provisions of the Securities Exchange Act of 1934 by misrepresenting revenues, profits, earnings and other aspects of Cascade's operations. On April 22, 1992, the Court consolidated Rosen's action with twenty-seven other plaintiffs ("plaintiffs") in sixteen related cases. On July 7, 1992, the plaintiffs filed a Consolidated Amended Class Action Complaint ("Complaint") on behalf of all persons who purchased common stock of Cascade between August 11, 1989 and November 19, 1991 (the "Class Period") against the defendants.[1]

Cascade became a public company in 1985 when Incendy merged Jean Cosmetics with Cascade Importers, Inc., a shell corporation. In December 1985, Cascade acquired six fashion boutique stores and in February 1989 acquired two store chains, Diana and Allison, in which Cascade planned to sell its cosmetics. Cascade's 1989 10–K described Cascade as comprised of three divisions: cosmetics, fashion boutiques and women's apparel stores. The cosmetic division manufactured and sold high priced cosmetics and skin care products and imported designer fragrances which were sold under the name of Jean Cosmetics at Cascade's cosmetic counters and its other retail outlets. The 1989 10–K stated that Jean Cosmetics operated approximately 188 cosmetic counters in women's apparel stores, 11 of its own leased cosmetic sales outlets, and operated 23 fashion boutiques which sold women's apparel, proprietary cosmetics, skin care, beauty aids and imported fragrances. In August 1990 Cascade acquired a controlling interest in Conston, a retailer of women's clothing that had filed for bankruptcy relief. Cascade reported record revenues and substantial financial growth in its SEC filings, press releases and other public documents as its stock sales continued to increase. On September 27, 1991, Cascade filed its 1991 10–K which reflected its financial growth.[2]

---

**1.** The other named defendants in the Complaint are: Victor G. Incendy ("Incendy"), President, Chief Executive Officer and Chairman of the Board of Directors of Cascade; John T. Sirmans, Jr., Vice–President and Corporate Secretary for Cascade and a member of the Board; Harvey Conners, member of the Board; Barry Schur, member of the Board; George Duberson, member of the Board; Lawrence Moses, member of the Board; Jeannette B. Van Zanten, President of Jean Cosmetics, President and Director of J.B. Boutiques, Inc., Director of Conston and wife of Incendy; Bernard H. Levy, auditor of Cascade; Case Van Oeveren, Chief Financial Officer of Fran's Fashions.

**2.** The 1991 10–K represented that Cascade operated 245 Jean Cosmetic counters in its apparel stores and fashion boutiques and that effective July 1, 1991 Boutiques Allison, Inc., which operated the Diana and Allison chains, merged into Fran's Fashions, Inc. This 10–K also stated that as of June 30, 1991, Cascade operated 126 stores in 13 states.

In August 1991 the SEC began to investigate Cascade and its subsidiaries. In September 1991 the investment community began to question Cascade's reported profits. On October 1, 1991 the Overprices Stock Service ("OSS") issued a report on Cascade reporting on the difficulty of obtaining information from Cascade, that Cascade's auditor had been fined and put on probation for incompetence, that Cascade and Conston differed on whether Jean Cosmetics were being placed into Conston stores, that Cascade did not consolidate Conston's financial statement despite its majority interest, and that store formats were inconsistent with actual store checks.

On November 20, 1991 Cascade announced that its financial statements for the fiscal year ending June 30, 1991 may not be accurate; it was not able to locate Incendy, and that Karp was elected as temporary chairman of the board. On December 16, 1991 Cascade filed for Chapter 11 bankruptcy relief. On January 8, 1992 Karp announced to Cascade shareholders that for at least the last two years Cascade's audited and unaudited financial statements did not correctly reflect its revenues and earnings; large numbers of unauthorized shares of common stock were issued in violation of federal security laws; there were fewer retail outlets and cosmetic counters than represented; the cosmetics did not generate the represented income and there were just 70 retail clothing outlets.

A January 1992 SEC filing revealed that on November 15, 1991 Incendy delivered to Karp 8,337,036 shares of Cascade stock for K & S to resolve Cascade's problems; that Cascade had assets of $8 million and liabilities of $14.5 million, in contrast to the figures in the 1991 10–K which reported assets of $65.9 million and liabilities of $17.3 million, and that it had $6.8 million more outstanding shares of common stock than what was reported. According to a bankruptcy examiner's report and recommendations, the entire Jean Cosmetic division was nonexistent; the losses of the apparel division and Jean Cosmetics were known to Cascade's management as early as 1989 and Fran's, Swim 'N Sport and J.B. Boutiques were all operating at a loss. The examiner recommended the removal of Sirmans and Karp which was affirmed by United States Bankruptcy Judge Robert A. Mark.

The plaintiffs allege that throughout the Class Period that materially misleading statements or omissions were made by the defendants. It is alleged that C & L, auditors of Fran's and Conston, in auditing Fran's made false statements or omissions, furthered the fraud by opining that Conston's financial statement should not be consolidated with Cascades' and knew that Cascade was incapable of infusing capital into both of these subsidiaries which needed substantial capital to survive. Raymond James, a securities broker, is alleged to have made misrepresentations in selling Cascade's stock. Deltec, an underwriter, is alleged to have acquired 1.2 million shares of unregistered common stock which it sold to the public. K & S, Cascade's securities counsel, is alleged to have made misrepresentations in Cascade's registration statements, the January 4, 1990 Prospectus and Form 10–Ks. GY & S, Cascade's counsel, is alleged to have acted as Cascade's "hired gun" in fending off those who raised questions concerning Cascade.

The Complaint alleges violations by the defendants of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b–5 of the Securities & Exchange Commission, 17 C.F.R. § 240.10b–5 and common law claims for fraud and negligent misrepresentation. The plaintiffs have also sued K & S under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* and assert violations by Deltec of the Securities Act of 1933, §§ 12(1) and 12(2), 15 U.S.C. § 771(1), (2). The defendants have moved to dismiss the various counts of the Complaint.

## DISCUSSION

### I. STANDARD OF REVIEW

For purposes of a motion to dismiss, "all facts alleged must be accepted as true." *Eddy v. City of Miami,* 715 F.Supp. 1553, 1555 (S.D.Fla.1989); *see In re Sahlen & Assoc., Inc.,* 773 F.Supp. 342, 351 (S.D.Fla. 1991). It has long been the rule that "a complaint should not be dismissed for failure

to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The motions to dismiss will be evaluated accordingly.

## II. SECTION 10(b) SECURITIES[3]

### A. Primary Violations

The elements of a cause of action under 10(b) or Rule 10b–5 require that the plaintiff allege: "(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which the plaintiff relied, (5) that proximately caused his injury." *Ross v. Bank South N.A.,* 885 F.2d 723, 728 (11th Cir. 1989), *cert. den.,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990); *see McDonald v. Alan Bush Brokerage Co.,* 863 F.2d 809, 814 (11th Cir.1989). The allegations for an action under 10(b) or 10b–5 must meet the specificity requirement under Rule 9(b) which provides that allegations of fraud must be pled with particularity. Fed.R.Civ.P. Rule 9(b); *Sahlen,* 773 F.Supp. at 352. Nonetheless, Rule 9(b)'s requirements "must not abrogate the concept of notice pleading" under Rule 8 of the Federal Rules of Civil Procedure. *Durham v. Business Mgmt. Assoc.,* 847 F.2d 1505, 1511 (11th Cir.1988) (citing *Friedlander v. Nims,* 755 F.2d 810, 813 n. 3 (11th Cir. 1985)). In sum, "while mere conclusory allegations of fraud will not satisfy Rule 9(b), allegations which provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud are sufficient." *Sahlen,* 773 F.Supp. at 352. The defendants contend the Complaint should be dismissed for failure to allege each defendants' role in the fraud with the requisite specificity. The Court concludes that the Complaint adequately sets forth each defendants' role in the alleged fraud to satisfy Rule 9(b).

### 1. False Representations

Allegations of false representations of a material fact satisfy Rule 9(b) if the complaint alleges the statements or omissions made; the time and place of each statement or omission and the content and manner in which the plaintiffs were misled. *Tapken v. Brown,* No. 90–691–CIV–MARCUS, 1992 WL 178984 at *14 (S.D.Fla.1992, March 13, 1992).

### a. Duty to Disclose

Defendants, K & S, GY & S, C & L and Deltec claim that any alleged omissions are not actionable as they did not have a duty to disclose. An "omission to state a material fact is proscribed only when the defendant has a duty to disclose." *Rudolph v. Arthur Anderson & Co.,* 800 F.2d 1040, 1043 (11th Cir.1986), *cert. den.,* 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987). Factors to consider in determining whether a duty to disclose exists depends upon the circumstances of each case. *Woodward v. Metro Bank,* 522 F.2d 84, 97 n. 28 (5th Cir.1975). Some factors to consider are

'the relationship between the plaintiff and defendant, the parties' relative access to the information to be disclosed, the benefit derived by the defendant from the purchase or sale, defendant's awareness of plaintiff's reliance on defendant in making its investment decision, and defendant's role in initiating the purchase or sale.'

---

**3.** Section 78j(b) provides that:

> It shall be unlawful for any person, directly or indirectly ...
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
> Rule 10b–5 provides, in pertinent part, that:

> It shall be unlawful for any person, directly or indirectly ...
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchases or sale of any security.

*Rudolph, supra,* (quoting *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1314 (5th Cir.1977), *cert. den.,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978)). In addition, a duty to disclose may be created once a disclosure is made. *Id.* Other factors indicating a duty to disclose are the defendant's knowledge; the significance of the misstatement; whether the omission was intentional and the extent of the defendant's participation in the fraud. *Id.* (citation omitted); *see Tapken, supra,* at *14; *see also Chiarella v. United States,* 445 U.S. 222, 230, 100 S.Ct. 1108, 1115–16, 63 L.Ed.2d 348 (1980).

As to GY & S and K & S (the "law firms"), the Court concludes no duty to disclose exists. The Complaint alleges that K & S omitted to state material facts, ignored "red flags" and failed to investigate to determine the accuracy of Cascade's public filings. K & S prepared various public reports, registration statements, prospectuses and Form 10–Ks which the plaintiffs claim K & S knew contained misrepresentations or recklessly disregarded the misrepresentations in these filings. The plaintiffs identify numerous "red flags" ignored by K & S such as Cascade's failure to supply K & S with requested information about its finances, that K & S questioned the use of Cascade's auditor and failed to inquire into the cosmetic counter lease arrangements. Further, the plaintiffs argue that K & S assumed a duty of full disclosure due to their participation in drafting public documents and shareholder letters. Similarly, the Complaint alleges that GY & S ignored "red flags" and failed to inquire as to the truth of Cascade's financial statements. It is also alleged that both law firms had significant economic incentives not to inquire or disclose the fraud.

While this Circuit has not squarely addressed whether an attorney sued as a primary violator of federal security laws has a duty to disclose, *see Agapitos v. PCM Inv. Co.,* 809 F.Supp. 939, 946 (M.D.Ga.1992) (addressing attorney's duty to disclose for aiding and abetting securities claim), other circuits have done so. A failure to disclose material information constitutes a securities fraud under § 10(b) only if there is a duty to disclose.

*Fortson v. Winstead, McGuire, Sechrest & Minick,* 961 F.2d 469, 472 (4th Cir.1992) (citing *Chiarella,* 445 U.S. at 228, 100 S.Ct. at 1114 (1980)). The Fourth Circuit refused to hold a lawyer liable under § 10(b) for failing to disclose information about a client absent a confidential relationship with the third party. *Schatz v. Rosenberg,* 943 F.2d 485, 490 (4th Cir.1991) (citing *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 496 (7th Cir.1986)), *cert. den.,* —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). The Fifth Circuit has held that an underwriter's lawyers did not owe bondholders a duty to disclose inaccuracies in an offering statement despite its duty of due diligence to investigate the representations in the offering statement. *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1124–25 (5th Cir.1988) (stating the law generally recognizes suits against lawyers for their legal opinions "only if the non-client plaintiff can prove that the attorney prepared specific legal documents that represent explicitly the legal opinion of the attorney preparing them for the benefit of the plaintiff"), *vacated on other grounds,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). In *Schatz,* the plaintiffs maintained that the defendant's lawyers were liable for securities fraud since they remained silent even though they knew its client's financial statements and an update letter relied upon by the plaintiffs' were false and that the lawyers had prepared draft closing documents containing misrepresentations. The court noted that the lawyers were not alleged to have made inaccurate legal representations and were sued for not "tattl[ing] on their client for misrepresenting his financial condition." *Schatz,* 943 F.2d at 491. In adopting the rule enunciated by the Fifth and Seventh Circuits, the court held "that unless a relationship of 'trust and confidence' exists between a lawyer and a third party, the federal securities laws do not impose on a lawyer a duty to disclose information to a third party." *Id.* at 492.

This Court finds the reasoning of the Fourth, Fifth and Seventh Circuits as to attorney liability for failure to disclose material information persuasive.[4] Similar to

---

4. In addressing attorney liability for aiding and abetting securities fraud, the court in *Agapitos*

*Schatz,* the plaintiffs in this cause argue that the law firms are liable for not blowing the whistle on their client and for not making further inquiry once aware of the "red flags." However, there are no allegations that the plaintiffs had a fiduciary relationship with the law firms, that the law firms actively solicited or prepared solicitation documents or issued any misleading legal opinions as to Cascade's financial condition.

The allegations in this cause are distinguished from those alleged in *In re American Continental Corp./Lincoln S & L Secur. Litigation,* 794 F.Supp. 1424 (D.Ariz.1992) where the court found material issues of fact whether the bank's law firm knew of the fraud and despite such knowledge provided assistance in hiding loan files from regulators, offered detailed advice on setting up a bond sales program, participated in lobbying for investments, made political contributions on its client's behalf, reviewed SEC statements and prospectuses and lent its name to a misleading legal opinion for inclusion in the bond registration statement. There are simply no allegations in this matter suggesting such conduct by the law firms; rather, the basis for their liability is the failure to "tattle on their client" which is not actionable.

C & L also contends that it did not have a duty to disclose or "blow the whistle" on Cascade for the alleged misrepresentations contained within the 1991 10–K. The plaintiffs allege that C & L in auditing Fran's and Conston ignored numerous "red flags", such as the absence of Jean Cosmetics at Fran's during the June 1991 audit of Fran's, the losses suffered by Fran's and Conston, the inability of Cascade to make the financial infusion for Fran's and Conston and it had reviewed the 1991 10–K filed by Cascade depicting 126 Fran's stores which C & L knew was false. In *Rudolph,* an accounting firm prepared audit reports and other financial statements for its client which were included in a memo offering partnership investment units for sale. Subsequently, its

client devised a scheme to defraud the original purpose of the partnership investment and to the divert the funds. The plaintiffs alleged that during this period, the accountants were performing substantial non-auditing services and knew or failed to learn of its clients diversion. The court stated that:

> An investor might reasonably assume that an accounting firm would not permit inclusion of an audit report it prepared in a placement memo for an offering the firm knew to be fraudulent, and that such a firm would let it be known if it discovered to be fraudulent an offering with which it was associated. It is not unreasonable to expect an accountant, who stands in a 'special relationship of trust vis-a-vis the public,' *Gold [v. DCL Inc.],* 399 F.Supp. [1123], 1127 [ (S.D.N.Y.1973) ], and whose 'duty is to safeguard the public interest,' *Touche, Niven, Bailey & Smart,* 37 S.E.C. 629, 670 (1957), to disclose fraud in this type of circumstance, where the accountant's information is obviously superior to that of the investor, the cost to the accountant of revealing the information minimal, and the cost to investors of the information remaining secret potentially enormous.

*Id.* at 1044–415 (footnotes omitted). The court could not conclude on the pleadings that no duty to disclose existed. *Id.* at 1045. C & L was not responsible for auditing Cascade and did not participate in preparing Cascade's financial statements; however, it is alleged that C & L knew of the falsity of Cascade's 1991 10–K. As the auditor for Fran's it may be proven that C & L had a duty to disclose that Cascade was falsely representing information concerning the number of existing stores and cosmetic counters known not to exist by C & L. Thus, the Complaint sufficiently states that a duty to disclose existed as to C & L.

### b. Affirmative Misrepresentations

 The defendants also challenge the allegations that they made misrepresenta-

---

held that an attorney who prepared allegedly misleading closing documents for his client did not have a duty to disclose in the absence of a fiduciary relationship with the plaintiff. 809 F.Supp. at 946. The court also evaluated whether a duty existed under the following factors: the

relationship of the parties; attorney's superior access to information; the benefits derived by the attorney; the attorney's awareness of plaintiff's reliance and attorney's activity in initiating the transactions.

tions. The Complaint alleges that GY & S with "blind adherence" to Incendy's statements suggested statements Cascade could issue to the public in response to the questioning of Cascade's financial statements and which were utilized in substantial part by Cascade. (Compl. at ¶¶ 273, 281). It is also alleged that GY & S's opinion letter was false when it opined that despite the bankruptcy courts approval in April 1991 of Conston's reorganization plan, that Conston was still in bankruptcy. These alleged representations were made by GY & S to its client and not to third parties. Further, there are no allegations that any of these representations were the representations of GY & S and not Cascade. Similarly, in *Schatz* the court held that the submitting of a misleading financial update letter on behalf of the law firm's client was not an independent affirmative misstatement by the law firm for § 10(b) liability. 943 F.2d at 494 (citing *Friedman v. Arizona World Nurseries, Ltd.*, 730 F.Supp. 521 (S.D.N.Y.1990) (holding lawyers who drafted an offering, which included an offering memorandum, a legal opinion and a tax assistance letter, were not liable for misrepresentations in the offering memorandum as these were not representations by the law firm)). Likewise, this Court concludes that the Complaint fails to allege that GY & S made misrepresentations for § 10(b) liability.

As to K & S, the Complaint alleges K & S prepared public reports, registration statements, prospectuses and Form 10s for Cascade and like GY & S threatened others who questioned the truth about Cascade. The Complaint also alleges that K & S drafted press releases and letters to shareholders to deter the dropping of the price in stock. However, these representations are not independent affirmative representations by K & S; rather, they are the representations of its client. *See Schatz*, 943 F.2d at 495. The Court concludes that the Complaint also fails to allege that K & S made misrepresentations for § 10(b) liability.[5]

### 2. Materiality

The plaintiffs' must allege that the statements or omissions made by each of the defendants were materially misleading. *Basic Inc. v. Levinson*, 485 U.S. 224, 238, 108 S.Ct. 978, 987, 99 L.Ed.2d 194 (1988). Materiality will depend "on the significance the reasonable investor would place on the withheld or misrepresented information." *Id.* at 240, 108 S.Ct. at 988. To satisfy materiality, " 'there must a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' " *Id.* at 231–32, 108 S.Ct. at 983. Raymond James contends that the Complaint fails to allege that its omissions were material. The plaintiffs allege that Raymond James failed to disclose that it had not conducted a reasonable investigation of Cascade; that it had failed to obtain material information from Cascade regarding the location of each store and the financial controls actually in place as well as the comparable financial results. (Compl. at ¶ 213). The plaintiffs also contend that Raymond James made a market in Cascade, acquired shares of Cascade's stock for customers and that its research analyst, Bosken, had acquired shares of Cascade stock in Conston. Raymond James claims it disclosed its financial interest in Cascade and that the failure to disclose information concerning Cascade was not material as it was available to the public in various news articles.

For purposes of a motion to dismiss, a Court need only determine if the plaintiffs could prove a set of facts in support of their claim. This Court finds that the plaintiffs have met their burden since there is a substantial likelihood that the disclosure of these omissions would have been viewed by the reasonable investor as significantly altering the "total mix" of available information. *See Basic*, 485 U.S. at 231–32, 108 S.Ct. at 983. If this information was available in public documents, then summary judgment may be appropriate; nonetheless, based on the facts alleged in the Complaint, the Court con-

---

**5.** Defendant Deltec is not alleged to have made any omissions or misrepresentations; thus, it is not liable for a primary violation under § 10(b).

**1578**

cludes that there are sufficient allegations of the materiality of the omissions.

### 3. Scienter

Raymond James also argues that the Complaint fails to allege that affirmative misrepresentations and omissions are pled with the requisite scienter. In addition to the alleged omissions, it is pled that Raymond James made misrepresentations by issuing statements in its research reports as to Cascade's financial growth, revenues, earnings, store counts and its performance which it knew were false. Raymond James contends there are no allegations of actual knowledge of the falsity of the statements contained within in its research reports and that it was entitled to rely on the Cascade's public filings and press releases.

To prove scienter under § 10(b) the plaintiffs need not show a specific intent to deceive. Instead, the plaintiffs will prevail if they prove that Raymond James acted with "severe recklessness" of the falsity of the information provided to the public. *See McDonald,* 863 F.2d at 814 ("showing of 'severe recklessness' satisfies scienter requirement"); *Woods v. Barnett Bank,* 765 F.2d 1004, 1010 (11th Cir.1985); *Sahlen,* 773 F.Supp. at 358 (citation omitted). In this Circuit, severe recklessness " 'is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.' " *McDonald,* 863 F.2d at 814 (quoting *Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 961 (5th Cir.), *cert. den.,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981)). *See Magna Inv. Corp. v. Does,* 931 F.2d 38 (11th Cir.1991) (same). While, Rule 9(b) allows for averments of state of mind generally, there must be a factual basis to support the allegations

of intent. *Sahlen,* 773 F.Supp. at 358 (citations omitted). In *Tapken,* the court held that allegations sufficient to show scienter exist if it is alleged that the defendants were aware of or caused the acts and omissions, "or if the facts from which Defendants' recklessness or awareness can be inferred." 1992 WL 178984 at *15. *See also Aberbach v. Wekiva Assoc., Ltd.,* 735 F.Supp. 1032, 1036 (S.D.Fla.1990) (severe recklessness pled by setting forth facts of defendant's role and knowledge of documents).

The Complaint in this cause alleges that Raymond James'

> reports and statements with respect to Cascade, while purporting to be disinterested and objective professional investment analyses, based on in-depth current research, were in reality substantially false and misleading sales brochures which made exaggerated predictions based on unverified and unsupported information for which Raymond James knew, or should have known, it had no reasonable basis.

(Compl. at ¶ 158).[6] These allegations, if true, may evince severe recklessness or proof of knowing misconduct. This Court notes that Raymond James' recommendations of Cascade stock was based on information contained in Cascade's public filings; however, Raymond James touted that it did its own independent research, such as by its public statement in September 1991 that: "We talk to competitors, suppliers, customers and more than one person at each company so we can really get the feeling of whether they're putting the right spin on the ball. We're always reassessing on a daily basis our success stories." *Id.* at ¶ 159(a). In an August 1991 public statement, Bosken was quoted as saying that: "I went to see them [Cascade] [in late 1989], and they told a very bullish story. I watched them for nine months, and visited them on three separate occasions. They did what they told me they were going to do." *Id.* at ¶ 159(b). It is also alleged

---

6. This Court will not consider plaintiffs' argument that Raymond James' scienter is evinced by the inferences to insider trading as there are no allegations of insider trading in the Complaint specifically pled against Raymond James. While Raymond James is alleged to be a controlling

person within the meaning of § 20(a), the Complaint only alleges § 20(a) liability against the named "Control Person Defendants", *i.e.* Incendy, Sirmans, Conners, Schur, Duberson, Moses and Van Zanten. (Compl. at ¶¶ 29, 358).

that Raymond James continued to pitch Cascade stock in light of warnings as to Cascade's viability. These allegations sufficiently establish scienter.

Raymond James cites to *University Hill Foundation v. Goldman, Sachs & Co.*, 422 F.Supp. 879, 902 (S.D.N.Y.1976) for support that it was entitled to rely on Cascade's public filings in recommending its stock. In *Hill*, the court stated it would be unreasonable to require brokers or underwriters to independently verify figures provided in public filings by the issuer's company. However, the court noted that in light of the warnings as to the company's insecure condition, a broker's exclusive reliance on public documents and representations by the company was inadequate so as to render the investigation done by the underwriter unreasonable and its representations untrue under § 12(2). *Id.* at 902. Likewise, it is alleged that Raymond James was aware of "red flags" as to Cascade's financial viability but continued to recommend its stock, albeit at a lower rating. These allegations, if true, evince sufficient recklessness for scienter.

C & L also contends that the Complaint fails to allege scienter. This Court disagrees. The allegations against C & L are that it failed to issue its audits in accordance with generally accepted accounting principles. However, while violations of accounting standards do not create an inference of scienter or recklessness, *Sahlen*, 773 F.Supp. at 358, the Complaint alleges facts sufficiently inferring that C & L knew of the fraud. For instance, the Complaint alleges that in auditing Fran's and Conston, C & L failed to discover the existence of Jean Cosmetic counters even though it knew Cascade publicly stated that these counters were largely responsible for the success of its apparel stores and that these counters were being placed in Conston stores. Presuming these facts to be true, the Complaint adequately alleges scienter for purposes of a motion to dismiss.

### 4. Reliance

C & L claims that the Complaint fails to allege reliance. Plaintiffs have invoked the fraud on the market theory which entitles the plaintiffs to a rebuttable presumption of reliance. This theory is based on the hypothesis that in an open and developed securities market that material information about a company is reflected in the price of its stock. *See Basic*, 485 U.S. at 241, 108 S.Ct. at 988. The fraud on the market theory "finds its greatest justification when applied to class actions alleging fraudulent misrepresentations or omissions that affected the security prices on a developed open market." *Tapken, supra*, at *16. In order to invoke the fraud on the market theory, it must be alleged that the stock purchased or sold was "actively traded on a well-developed, efficient market or facts which give rise to such a inference." *Sahlen*, 773 F.Supp. at 356.

The allegations in the Complaint allege that C & L made public misrepresentations and that as a result of the these misrepresentations "that the market price of Cascade common stock was artificially inflated during ... the Class Period. In ignorance of the false and misleading nature of the representations ... plaintiffs and other members of the class relied, to their damage, on the integrity of the market in purchasing their shares." (Compl. at ¶ 365). Further, plaintiffs assert that "Cascade's common stock stopped trading following Incendy's disappearance and the public disclosure of the material information concerning Cascade which had been misrepresented or concealed as alleged in this complaint and the shares are now worthless." *Id.* at ¶ 366. These allegations are sufficient to plead the presumption of reliance under the fraud on the market theory.

### 5. Causation

C & L contends that the Complaint fails to plead causation. The law "[i]n this Circuit, [is that] a plaintiff must prove both actual causation ('transaction causation') and proximate causation ('loss causation') in order to prevail on his § 10(b) claim." *Sahlen*, 773 F.Supp. at 359 (citations omitted). Transaction causation is established by proof that the misrepresentations induced the plaintiff to invest, while loss causation requires the plaintiff to " ' 'prove not only that, had he known the truth, he would not have

acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss.'"'" *Id.* (quoting *Bruschi v. Brown,* 876 F.2d 1526, 1530 (11th Cir.1989) (quoting *Huddleston v. Herman & MacLean,* 640 F.2d 534, 549 (5th Cir.1981)). C & L contends since it did not make public misstatements or omissions about Cascade that the plaintiffs cannot show that they were "caused" to purchase Cascade stock. However, this Court has concluded that the Complaint sufficiently alleges that C & L may have had a duty to disclose, that the failure to disclose was material and it is alleged that C & L made misrepresentations. The Complaint sufficiently pleads both loss and transaction causation as it is alleged that the plaintiffs bought stock as a result of the misrepresentations and omissions and as a result of the public disclosures the stock plummeted and is now worthless.

### B. Aiding and Abetting

▇▇▇▇▇▇ The plaintiffs also allege secondary liability against all defendants for aiding and abetting securities fraud. The elements for aiding and abetting are as follows:

'[A] person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party has general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation."

*Woodward,* 522 F.2d at 94–95 (quoting *SEC v. Coffey,* 493 F.2d 1304, 1316 (6th Cir.1974), *cert. den.,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975)). *See Schneberger v. Wheeler,* 859 F.2d 1477, 1480 (11th Cir.1988) (same), *cert. den.,* 490 U.S. 1091, 109 S.Ct. 2433, 104 L.Ed.2d 989 (1989). "Knowledge may be shown by circumstantial evidence, or by reckless conduct, but the proof must demonstrate actual awareness of the parties role in the fraudulent scheme." *Woodward,* 522 F.2d at 96. If the act alleged for aiding and abetting liability is based on silence, the knowing assistance element does not require a conscious intent to aid the fraud if the alleged abettor was under a duty to disclose. *Rudolph,* 800 F.2d at 1045. If there is no

duty to disclose, a defendant may be liable only upon a showing of a high degree of scienter, "that is, with a 'conscious intent' to aid the fraud." *Woods,* 765 F.2d at 1010. In a case combining silence with affirmative assistance, "the degree of knowledge required should depend on how ordinary the assisting activity is in the business involved." *Id.* If the evidence evinces transactions constituting "daily grist of the mill" then liability may be found only upon clear proof of intent to violate the securities laws; however, if the alleged transaction is "atypical or lacks business justification" the court may infer knowledge. *Woodward,* 522 F.2d at 97.

While plaintiffs claim that the law firms knew the public statements it was making concerning Cascade's financial condition were false, there is no evidence that either law firm made any statements other than to its client. The allegations that they ignored "red flags" does not allege actual awareness of their role in the scheme and, at best, alleges aroused suspicions which are not actionable. *See Abell,* 858 F.2d at 1128. Further, as discussed above, the Complaint fails to allege sufficient facts to establish that the law firms had a duty to disclose the alleged omissions and there are no allegations that would evince the law firms acted with a conscious intent to aid the fraud or that there was clear intent to violate the securities laws.

The Court is unpersuaded by the plaintiffs claim that the law firms went beyond the role of scriveners. Both K & S and GY & S drafted public documents and attempted to curb questions about Cascade while knowing of serious questions about its client's true financial condition. However, the Court does not find the preparation of documents as instructed by a client or investigating legal theories and potential causes of action as so atypical or lacking all business justification. *See Agapitos,* 809 F.Supp. at 948 (attorney who drafted allegedly misleading legal document for client who committed securities fraud acted as a mere scrivener). Thus, the Complaint fails to allege § 10(b) liability for aiding and abetting against either GY & S or K & S.

Raymond James claims the Complaint fails to allege facts establishing awareness of its

role in the securities violation or that it knowingly and substantially assisted in the violation. This Court disagrees. The Complaint alleges Raymond James issued substantially false sales brochures based on unverified information which it knew or should have known had no reasonable basis. It is also alleged that Raymond James conducted its own research of Cascade and continued to tout the stock while aware of substantial questions about Cascade. These allegations are sufficient for aider and abetting liability.

C & L also claims that the Complaint fails to allege aiding and abetting liability. This Court disagrees. The plaintiffs allege that C & L violated various auditing standards, knew that Cascade was representing it had more Fran's stores than actually existed, intentionally avoided consolidating Conston's financial statement with Cascade's and in auditing Conston and Fran's it knew or was reckless in not knowing that there were no Jean Cosmetics counters as represented. These facts if true, are sufficient to conclude that C & L had actual awareness that its acts furthered the fraud by Cascade. Further, these facts conceivably could lead to the conclusion that C & L acted with the desire to aid the fraud and substantially assisted in this regard.

Deltec also argues that the plaintiffs have failed to plead its awareness of its role in the fraud or that it knowingly and substantially assisted in the fraud. This Court disagrees. The plaintiffs allege that:

> [T]hroughout the Class Period, the Company failed to disclose that large amounts of unauthorized shares of stock had been issued and, with the assistance of numerous other parties (who had often purchased the shares at below market prices), been placed into the market and sold to the unsuspecting investing public. By the

close of the Class Period, at least 6,048,000 unauthorized shares had been issued.

(Compl. at ¶ 361(d)). Further, it is alleged that Deltec knew or was aware that it had received unregistered securities since it had agreed to purchase unregistered shares, but received shares with no restrictive legend which it sold in the open market. *Id.* at ¶¶ 224, 226 231. These allegations are sufficient to establish general awareness of the fraud and knowing assistance on the part of Deltec. Thus, the Complaint pleads a cause of action for § 10(b) aiding and abetting liability against Deltec.

## III. SECTION 12

The plaintiffs have also sued Deltec for violations of §§ 12(1) and (2) of the Securities Act of 1933.[7] Deltec does not dispute that it is a statutory seller as defined under § 12 but claims the Complaint is insufficient for § 12 liability as it fails to allege that Deltec sold Cascade stock to any of the named plaintiffs. The Supreme Court has clarified that § 12(1) subjects the owner of securities, who passed title to the buyer for value, to liability. *Pinter v. Dahl,* 486 U.S. 622, 642, 108 S.Ct. 2063, 2076, 100 L.Ed.2d 658 (1988). The purchase requirement confines § 12 liability to those situations in which a sale has taken place. *Id.* at 644, 108 S.Ct. at 2077. The plaintiffs claim that there is a possibility that some of the named plaintiffs purchased the stock from Deltec and have alleged in the Complaint that: "Plaintiffs and other members of the Class purchased these unregistered securities from Deltec." (Compl. at ¶ 403). These allegations sufficiently plead that plaintiffs were purchasers from Deltec.

Deltec also argues that § 12(2) applies only to initial offerings, not to secondarily-traded securities, and since all of Deltec's shares were sold on the open market there is

---

7. Section 12 provides, in pertinent part:

 Any person who—
 (1) offers or sells a security in violation of section 77e of this title, or
 (2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a

 material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him....
 15 U.S.C.A. § 77*l*.

no liability under § 12(2). In *Sahlen,* this Court stated that other courts interpreting § 12(2) have limited its application to initial offerings. 773 F.Supp. at 363 (citations omitted). The plaintiffs have alleged that Deltec's sales by the January 4, 1990 prospectus were initial offerings to the public and that Deltec sold unregistered shares received from Cascade directly to the plaintiff purchasers. These allegations, if true, are sufficient to allege that the shares in issue were bought by the plaintiffs from Deltec pursuant to an initial offering.

Deltec also argues that plaintiffs have failed to allege that Deltec sold shares pursuant to either a prospectus or oral communication containing misrepresentations or omissions. The Court also finds this argument unavailing. The plaintiffs allege that the January 4, 1990 prospectus contained false and misleading information and that Deltec sold the stock without disclosing that it was unregistered. The Complaint sufficiently alleges elements of § 12(2) liability.

## IV. RICO

Plaintiffs have asserted RICO claims against K & S for violations of § 1962(a), (b), and (c) either as primary participants or as aiders and abettors of the alleged predicate acts. K & S have moved to dismiss these counts in their entirety. " 'To state a claim under RICO a plaintiff must allege each of the following four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Durham,* 847 F.2d at 1511 (quoting *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The allegations in the Complaint must meet the specificity requirement under Rule 9(b). *See Hunt v. American Bank & Trust Co.,* 606 F.Supp. 1348, 1363 (N.D.Ala.1985) (Rule 9(b) pleading requirements are applicable to civil RICO actions), *aff'd,* 783 F.2d 1011 (11th Cir.1986).

The provisions at issue provide for liability if one "uses or invests income derived 'from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in intestate commerce, § 1962(a)"; or for acquiring or maintaining an interest in or control of an enterprise " 'through a pat-

tern of racketeering activity,' § 1962(b)"; or "if, while employed by or associated with such an enterprise, he conducts or participates in the conduct of its affairs, 'through a pattern of racketeering activity,' § 1962(c)...." *Sahlen,* 773 F.Supp. at 365. Section 1961 defines predicate acts to mean "any act which is indictable under any of the following provisions of title 18 United States Code; ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)" and fraud in the sale of securities. The elements of § 10(b) securities fraud are set out above. "Mail or wire fraud occurs when a person intentionally participates in a scheme 'to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises' and uses the mails or wires in furtherance of that scheme." *Gore v. Eichholz & Assoc., P.C.,* 1992 WL 96316 at *2, 1992 U.S.Dist. LEXIS 5998 at *8 (S.D.Ga. April 24, 1992) (quoting 18 U.S.C. §§ 1341, 1343; citing *United States v. Ethridge,* 948 F.2d 1215, 1216 (11th Cir. 1991)). Intent to defraud "is an essential element of both causes of action." *Sahlen,* 773 F.Supp. at 365.

The requisite mental state for RICO actions is that found in the predicate offense. *Becks v. Emery–Richardson, Inc.,* 1990 WL 303548 *37 (S.D.Fla. Dec. 21, 1990). A specific "mental state of knowledge of the wrongdoing or specific intent is an essential element" of the predicate acts of securities fraud and mail and wire fraud. *Id.* To maintain a RICO action, at a minimum, the plaintiffs must allege sufficient facts with enough specificity to show probable cause that the predicate acts were committed. *Banco de Desarrollo Agropecuario, S.A. v. Gibbs,* 640 F.Supp. 1168, 1175 (S.D.Fla.1986). In other words, the complaint must allege sufficient facts to support an indictment against the defendants as to the predicate acts as "[m]ere association with a RICO enterprise or even reckless disregard for the truth is not enough to establish RICO liability." *Becks, supra.*

The plaintiffs claim that they have alleged sufficient allegations of criminal intent for RICO liability and point to allegations that K & S drafted a series of false and misleading

press releases and failed to follow up on questions regarding the truth of Cascade's business. Also, it is alleged that "[i]n the course of its representation of Cascade, and in the conduct of its so called due diligence investigations, defendant K & S knew, recklessly disregarded, or should have known of material facts regarding the business affairs of Cascade which were misrepresented and omitted from Cascades' public filings and statements." (Compl. at ¶ 241).

Nonetheless, since Rule 9(b) applies to RICO actions, the Complaint must set forth sufficient facts to establish, if true, the requisite intent. The Complaint fails to plead the requisite intent in this cause. The plaintiffs do not allege sufficient facts to infer K & S' knowledge of the alleged scheme to defraud. Also, "reckless disregard" is insufficient to establish probable cause for a RICO violation. *Becks, supra,* at *38.

The Complaint also fails to sufficiently allege aiding and abetting by K & S in the alleged racketeering activity. To allege aiding and abetting RICO liability, a plaintiff must plead: "(1) the existence of a primary fraud; (2) specific details of each aider and abettor's knowledge of that primary fraud and (3) the aider's substantial assistance in the fraud." *Id.* The plaintiff must show "for each predicate act that the defendant was associated with the wrongful conduct, participated in it with the intent to bring it about, and sought by his actions to make it succeed." *Sahlen,* 773 F.Supp. at 367–68. Further, "to be liable for aiding in mail, wire, or security fraud—all crimes of specific intent—the defendant must have shared the principal's criminal intent." *Id.* at 368. In *Sahlen,* the court held the complaint sufficiently alleged knowledge of the scheme and knowing assistance as plaintiffs alleged that auditors aided and abetted the officers and directors by consenting to the use of their reports in the false financial statements and registration statements, and alleged incidents establishing that the auditors' knowingly concealed the true financial condition of the company. *Id.* In contrast, the allegations as to K & S fail to allege facts to evince that they shared the principals' intent to commit securities fraud or mail and wire fraud and, at

most, allege aroused suspicions or simple negligence. Further, the fact that K & S is alleged to have received personal gifts from Incendy during the course of its representation, does not establish the requisite intent. Thus, the Complaint fails to allege a cause of action for RICO aider and abettor liability.

## V. PENDENT CLAIMS

Since the Court has concluded that the Complaint fails to allege a cause of action for securities fraud and RICO violations, there is no federal jurisdiction for the pendent claims against K & S and GY & S for fraud and negligent misrepresentation. *See L.M.E. Inc. v. City of Hollywood,* 605 F.Supp. 185, 190 (S.D,Fla.1985).

### A. Fraud

The plaintiffs assert a claim for fraud against all the defendants for materially false misrepresentations or omissions which they knew or expected to be relied upon by the Class. (Compl. at ¶ 401). The elements for common law fraud are (1) a false statement of a material fact; (2) known by the defendant to be false; (3) made to induce the plaintiff to act in reliance; (4) the plaintiffs acts in reliance upon the representations; and (5) that proximately caused his injury. *Johnson v. Davis,* 480 So.2d 625, 627 (Fla. 1985). Raymond James, C & L and Deltec contend that the plaintiffs have failed to adequately plead reliance.

Unlike federal law, Florida does not recognize a presumption of reliance based on fraud on the market theory. *Kahler v. E.F. Hutton & Co.,* 558 So.2d 144, 145 (Fla. 3d Dist. Ct.App.1990); *Sahlen,* 773 F.Supp. at 371. *See Wells v. HBO & Co.,* 813 F.Supp. 1561, 1569 (N.D.Ga.1992) (court held that since Georgia law required actual reliance that fraud on market theory was not sufficient to plead reliance for negligent misrepresentation claim). Similar to *Sahlen,* the Complaint fails to allege which plaintiffs relied on which particular statements made by which particular defendants, but unlike *Tapken,* the Complaint does not allege class reliance separate and apart from fraud on the market theory. *Compare Tapken, supra,* at *24

(class reliance pled separate and apart from fraud on market theory).

### B. Negligent Misrepresentation

The elements for negligent misrepresentation are those for a fraud claim, except that it does not require the element of knowledge to establish scienter. *Atlantic Nat'l Bank v. Vest,* 480 So.2d 1328 (Fla. 2d Dist.Ct.App. 1985), *review den.,* 491 So.2d 281 (Fla.1986) and 508 So.2d 16 (Fla.1987). For the same reasons as stated above, the negligent misrepresentation claim must fail for failure to plead reliance. As to C & L, even though the Florida Supreme Court has relaxed accountant liability, the Complaint still fails to allege reliance for a cause of action against C & L. *See First Florida Bank, N.A. v. Max Mitchell & Co.,* 558 So.2d 9 (Fla.1990) (adopting § 552 of the *Restatement (Second) of Torts* (1976) for accountant liability which states an accountant may be liable to those in privity and to those whom it knows will rely on his opinion rather than those who it should have known would rely). There are no allegations that C & L performed its audits knowing and intending that the plaintiffs would rely on the information in deciding to purchase Cascade stock or that C & L took affirmative steps to induce the plaintiffs to rely on its audits. Thus, the Complaint fails to allege a cause of action against C & L, Raymond James and Deltec.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned concludes that the Complaint fails to state a cause of action for federal securities fraud or RICO against Karp & Sommers and Gunster, Yoakley & Stewart, P.A. and fails to plead fraud or negligent misrepresentation against all defendants. The Complaint does state a cause of federal securities claim against Raymond James, Coopers & Lybrand and Deltec and a § 12 claim against Deltec. Accordingly, the undersigned hereby

RECOMMENDS that the Complaint be DISMISSED against Karp & Sommers and Gunster, Yoakley & Stewart, P.A. as to all counts and that the motions to dismiss be DENIED for Count I for § 10(b) and Rule 10(b)–5 against Raymond James, Coopers & Lybrand and Deltec, and be DENIED for Count VIII for § 12(1) and IX for § 12(2) against Deltec and GRANTED for Count V Negligent Misrepresentation and Count VII Fraud against all defendants.

The parties have ten days from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge Lenore C. Nesbitt. *See* 28 U.S.C. § 636 (1991). Failure to timely file objections may bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. den.,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

RESPECTFULLY SUBMITTED this 17th day of May, 1993.